**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Criminal No. 23-160(35)(NEB/JFD)**

United States of America,

Plaintiff,

vs.

Arron Davis,

Defendant.

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING**

This Sentencing Memorandum is submitted on behalf of Defendant Arron Davis in connection with his sentencing before the Honorable Nancy E. Brasel. The memorandum will first address the applicable statutory sentencing range and the proper guideline calculations. Second, it will articulate and outline the basis for Mr. Davis's request for a reasonable sentence consistent with the provisions of 18 U.S.C. § 3553(a).

## I. SENTENCING GUIDELINE RANGE

On November 4, 2024, Mr. Davis plead guilty to Count 1 RICO conspiracy. The probation officer has calculated the advisory guideline range based on a criminal history offense level of 33 and a criminal history category of VI as 235-293 months. This calculation includes a 2-level dangerous weapon enhancement and a 3-level recommendation for acceptance of responsibility. Counsel is aware of the Court's prior rulings regarding the application of the firearm enhancement and will defer to the Court on that issue and agrees that each case should be decided individually. In addition, the

probation officer did not apply a mitigating role adjustment for Mr. Davis and determined that he was an average participant.

As the Court is aware, the parties entered into a plea agreement to recommend an applicable guideline range that would correspond to a total offense level of 30, inclusive of a 3-level reduction for acceptance of responsibility but did not include a criminal history category. The government took the position that that was the only way they were going to proceed and to resolve his case, Mr. Davis entered into that agreement. With the exception of the firearm enhancement, Mr. Davis does not object to the guideline range as computed by probation. He acknowledged in the plea agreement and does so in this position paper that it is up to this Court to make the final determination of the advisory guideline range. But he does ask the Court to grant a further variance consistent with the plea agreement and determine an appropriate offense level of 30.

As an additional basis for the Court to consider a variance, the United States Sentencing Commission has recently promulgated drug related amendments relating to mitigating role. The amendment re: §3B1.2's mitigating role provisions applies specifically to people sentenced for drug trafficking offenses. Special Instruction at §2D1.1(e)(2): provides that, in addition to circumstances identified in §3B1.2, a role reduction is "generally warranted" in drug offenses where a person's "primary function...was performing a low-level trafficking function." Also, new §2D1.1(a)(5) lowers base offense level caps that apply to people receiving the 3B1.2 reduction. Although these amendments have not yet been enacted, this is a clear indication that the Sentencing Commission is concerned that changes were necessary because the mitigating role reduction is not applied

as often as it should be in drug cases. This is a further basis for the Court to consider a variance in Mr. Davis's case.

In addition, Mr. Davis is seeking a downward departure pursuant to USSG §4A1.3 on the basis that his criminal history category of VI, overstates the seriousness of that history and requests a departure of criminal history to a level V. Accordingly, Mr. Davis is requesting that the Court determine an advisory guideline range of 151-188 months.

Finally, Mr. Davis and consistent with the plea agreement, is requesting a downward variance for the time he has been in prison for his state sentence. He was incarcerated at MCF-Moose Lake on May 5, 2023, and brought into federal custody pursuant to a Writ of Habeas Corpus on November 13, 2023. Mr. Davis requests that this time be deducted from the sentence imposed in this case. In addition, Mr. Davis is requesting that his federal sentence be concurrent with any remaining state sentence.

**Departure Grounds**

The PSR assigned Mr. Davis a criminal history category of VI determining that his criminal history score was 26. A significant portion of that criminal history was a result of Mr. Davis pleading guilty to seven (7) traffic offenses for which he received custodial sentences and six (6) of those convictions were entered while he was serving a prison sentence. These traffic convictions resulted in 12 criminal history points. In addition, Mr. Davis has misdemeanor convictions for theft and violation of an order for protection at the age of 19 and 20 respectively. Those convictions resulted in an additional 2 points for his criminal history. Mr. Davis maintains that criminal history category VI substantially overrepresents the seriousness of his criminal history and he respectfully requests a sentencing in category V rather than VI pursuant to USSG §4A1.3 (b)(1). In the event the

Court chooses not to grant a departure, it is respectfully requested that due to the nature of his criminal history, Mr. Davis be granted a variance in computing his ultimate sentence.

## II. <u>REASONABLE SENTENCE</u>

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes, mitigate, sometimes magnify, the crime and the punishment to ensue.

*Gall v. United States*, 128 S.Ct. 586, 598 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

### <u>THE CRIME</u>

Mr. Davis now stands before the Court as an individual, unique in his own circumstances and human failings. He is charged with a serious crime, but he has acknowledged responsibility for his actions, plead guilty, and avoided a trial. Mr. Davis's own words best state his position.

> **"I, Arron Davis, accept full responsibility for my actions in this case. Unfortunately the situation I found myself in after moving from California to the State of Minnesota, was not positive. Basically, I ended up in a neighborhood of gangbangers and drugs. I do, however, accept responsibility for my own individual actions and know that what I was doing was wrong and unacceptable. I understand that I will be incarcerated for a significant period of time, but I want the Court to know that I intend to take advantage of that time to better myself and take advantage of all educational, vocational and substance abuse programming. I cannot change my past, but I can only look forward to changing my future."**

This case involves two significant factors that are of concern to both the Court and the community. First, although Mr. Davis's overt acts initially involved only marijuana, they did escalate to involve fentanyl. Second, the general nature of gang activity and Mr. Davis's association with the Highs group of individuals and their activities. Mr. Davis recognizes

that this joint effort to engage in illegal activity was unacceptable and illegal. Nonetheless, he asks the Court to consider him as an individual in determining an appropriate sentence.

**THE PERSON**

Arron Davis is a 33-year-old man standing before the Court convicted of a serious crime and facing a prison sentence. As the PSR makes clear, this is not his first involvement with criminal activity, and he does have a rather lengthy criminal history. Nonetheless, he is still an individual and his own unique circumstances need to be considered by this Court in determining an appropriate sentence. His personal and family history is set forth in detail in the PSR and need not be repeated here. There is a lot of good in his upbringing and some bad but one thing has been persistent, possible mental health issues that may not been addressed adequately. According to his mother, these issues have persisted for some time and he has been previously diagnosed with both ADHD and a possible bipolar condition. As she described in her own letter to the Court, that situation can impact his ability to manage his anger and feelings. Hopefully, Mr. Davis will have an opportunity to be thoroughly evaluated while in the BOP to improve and treat any possible condition.

As reflected in his criminal history and the facts and circumstances surrounding the overt acts in the indictment that he has acknowledged, Mr. Davis has a substance abuse problem. This is not tendered as an excuse for his conduct but as a factor for the Court to also consider. He was introduced to the gang lifestyle at an early age and continued on that path like so many other young African American males in his neighborhood. The drugs and criminal activity came as a result of that affiliation. Obviously, a different path would have resulted in a better situation but that did not happen.

Despite all of this background and in the words of his sister Shakia, Mr. Davis has a good heart and so much life left to live. He wants to be a good father to his children and maintain a strong relationship with his family. His many positive traits have also been confirmed in numerous letters filed in support by friends and other family members. He knows that he will be incarcerated for quite sometime but wants the Court to be aware that he is going to take advantage of the opportunity to develop the skills and knowledge to avoid ever having to deal with criminal justice system again.

That determination and desire to change directions has been confirmed by his activity while incarcerated at MCF-Moose Lake even before his indictment in this case. While at Moose Lake, Mr. Davis completed several programming options including the Changing Faces Program and the SUD Program which deals with substance abuse. In addition, while at Sherburne County, he has participated in group therapy and has completed a significant portion of that program (See letter from Ms. Ashley Kranz dated April 30, 2025). He has also completed several other programs, and confirmation has been filed separately.

The bottom line is that Mr. Davis has taken advantage of the opportunities immediately upon his arrival at MCF-Moose Lake and continued with the limited options available at the Sherburne Jail while incarcerated. This is an obvious indication of his desire to improve his station in his life and his eagerness to take part in any BOP programming that may be available. Clearly, he is moving in the right direction and wants to continue to do so.

## **THE SENTENCE**

As stated previously, Mr. Davis recognizes that this is a serious offense involving dangerous and potentially lethal drugs and associated criminal activity. Both counsel and he are aware of the Court's concerns relating to this gang activity in general and obviously

Mr. Davis's participation specifically. He understands there is a need for punishment and deterrence, but it is also clear that Mr. Davis's role in this particular group was limited and mostly involved drug activity induced in large part by his own habit. He was however, not a participant in any of the more violent overt acts listed in the indictment.

## CONCLUSION

For all of these reasons and consistent with the provisions of 18 U.S.C. § 3553, a prison sentence beginning at the bottom of the advisory guideline range to be determined by the Court with additional variances for his own unique circumstances and time served at MCF-Moose Lake, would be sufficient punishment for this crime.

Dated: May 29, 2025

Respectfully submitted,

**LAW OFFICES OF**
**THOMAS H. SHIAH, LTD.**

By S/Thomas H. Shiah______
Thomas H. Shiah #100365
331 Second Ave South, Ste 705
Minneapolis, MN 55401
(612) 338-0066

Attorney for Defendant