UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| United States of America, | ) | File No. 23-cr-160 (NEB/JFD) |
| Plaintiff, | ) | |
| v. | ) | |
| Tyreese Giles(6), Josiah Taylor(7), Trevaun Robinson(10), William Banks(19), Gregory Brown(26), | ) | Courtroom 13W Minneapolis, Minnesota Tuesday, May 13, 2025 9:03 a.m. |
| Defendants. | ) | |

BEFORE THE HONORABLE NANCY E. BRASEL
UNITED STATES DISTRICT COURT DISTRICT JUDGE

**VOLUME II - JURY TRIAL PROCEEDINGS**
**EXCERPT OF ERIN VOSS TESTIMONY**

Court Reporter: RENEE A. ROGGE, RMR-CRR
United States District Courthouse
300 South Fourth Street, Box 1005
Minneapolis, Minnesota 55415

* * *

Proceedings recorded by mechanical stenography; Transcript produced by computer.

* * *

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | UNITED STATES ATTORNEY'S OFFICE<br>BY: THOMAS CALHOUN-LOPEZ<br>CARLA BAUMEL<br>300 South Fourth Street, #600<br>Minneapolis, Minnesota 55415 |
| | DEPARTMENT OF JUSTICE<br>ORGANIZED CRIME AND GANG SECTION<br>BY: BRIAN W. LYNCH<br>ALYSSA LEVEY-WEINSTEIN<br>1301 New York Avenue NW, #700<br>Washington, D.C. 20530 |
| For the Defendant Tyreese Giles(6): | RIVERS LAW FIRM, P.A.<br>BY: BRUCE RIVERS<br>701 Fourth Avenue South, #300<br>Minneapolis, Minnesota 55415 |
| For the Defendant Josiah Taylor(7): | WOLD LAW<br>BY: PETER B. WOLD<br>JOHN FEE<br>331 Second Avenue South, #705<br>Minneapolis, Minnesota 55401 |
| For the Defendant Trevaun Robinson(10): | PAUL ENGH, ATTORNEY AT LAW<br>BY: PAUL C. ENGH<br>150 South Fifth Street, #2860<br>Minneapolis, Minnesota 55402 |
| For the Defendant William Banks(19): | CATHERINE TURNER, ATTORNEY AT LAW<br>BY: CATHERINE L. TURNER<br>331 Second Avenue South, #705<br>Minneapolis, Minnesota 55401 |
| For the Defendant Gregory Brown(26): | NORTH STAR LAW GROUP PLLC<br>BY: DANIEL S. ADKINS<br>1295 Bandana Boulevard North, #335<br>St. Paul, Minnesota 55108 |

* * *

**4:32 P.M.**

**IN OPEN COURT**

**(JURY PRESENT)**

THE COURT: The government may call its next witness.

MR. CALHOUN-LOPEZ: Your Honor, the United States calls Investigator Erin Voss.

ERIN VOSS,

called on behalf of the government, was duly sworn, was examined and testified as follows:

THE WITNESS: I do.

THE COURT: Thank you. You may be seated.

When you are settled, please state and spell both your first and last name for the record.

THE WITNESS: My name is Erin Voss. E-R-I-N. V-O-S-S.

THE COURT: Thank you.

You may inquire.

MR. CALHOUN-LOPEZ: Thank you, Your Honor.

DIRECT EXAMINATION

BY MR. CALHOUN-LOPEZ:

Q. Good afternoon, ma'am.

A. Good afternoon.

Q. How are you employed?

A. I'm an investigator with the State of Minnesota.

Q. What are your duties as a State of Minnesota investigator?
A. The majority of my duties include providing outside law enforcement assistance with their criminal investigations.
Q. How long have you been a state investigator?
A. 19 years in April.
Q. And what is your educational background?
A. I have a four-year bachelor of arts degree in criminal justice from Metropolitan State University.
Q. Are you one of the case investigators in this investigation?
A. I am.
Q. And in your 19 years as a state investigator, have you investigated the Highs in the past?
A. I have.
Q. How long have you been involved in investigating the Highs gang generally?
A. The first case I worked was in 2010.
Q. And in your capacity as one of the case agents in this investigation, are you aware of whether defendant Trevaun Robinson was interviewed by law enforcement officers on April 13th of, of --
Excuse me, Your Honor. May I have just a moment?
THE COURT: You may.
MR. CALHOUN-LOPEZ: Thank you, Your Honor.

BY MR. CALHOUN-LOPEZ:

Q. Let me restate my question.

Are you aware of whether defendant Trevaun Robinson was interviewed by law enforcement officers on April 13th of 2015?

A. Yes.

Q. Was that interview documented?

A. Yes, it was.

Q. And was it maintained in a system of records?

A. Yes.

Q. Was it reliably preserved?

A. Yes.

Q. And are those records considered reliable within the law enforcement community generally?

A. Yes.

Q. Do you have access to those records?

A. Yes, I do.

Q. And do you know when defendant Trevaun Robinson was interviewed, was he asked whether he identified with any particular group or --

MR. ENGH: Excuse me. Calls for hearsay.

THE COURT: I'm going to sustain the objection.

MR. CALHOUN-LOPEZ: Your Honor, may I have a brief sidebar?

THE COURT: You may.

**(Sidebar discussion)**

THE COURT: Mr. Calhoun-Lopez.

MR. CALHOUN-LOPEZ: Your Honor, two points on this. This goes to the documentary evidence of the jail intake interview. So the evidence itself would be the jailhouse document, which, unless I'm mistaken, Mr. Robinson opposes admission to.

So our compromise was to allow Investigator Voss to testify to the record.

I also believe that we've established separately that it was a, that it was a, not hearsay because it's maintained, a public record maintained in the system of records to which she has access as a custodian of records. And so we think it would be admissible even if we weren't tailored to, to mitigate any potential prejudice.

THE COURT: Mr. Engh.

MR. ENGH: Well, we talked about this pretrial, and the, this court -- we talked about this -- we talked about this pretrial. This court noted there still would be a hearsay objection because the person who interviewed Mr. Robinson is not appearing.

I persisted in that objection. I didn't enter into a compromise as to what would be admissible or not admissible, in my memory. So I persist as to the hearsay objection. I mean --

THE COURT: As to the testimony, that's true. As to the document itself, what's your objection?

MR. ENGH: Well, we had a pretrial ruling the document wouldn't go in because it was inherently prejudicial, and you in your pretrial ruling excluded the document. That's my memory of our hearing.

THE COURT: Mr. Calhoun-Lopez.

MR. CALHOUN-LOPEZ: Your Honor, we do maintain that because this is a public record, which the witness has established that it was maintained in a system of records and that those records are reliable public documents, that the records are admissible regardless of whether the original person who took the statement -- I mean, that would be the purpose of the hearsay. This would be an example in our view of double hearsay.

It's Mr. Robinson's hearsay, but of course that's covered by admission by a party opponent. And then secondarily it's hearsay in the sentence that the person who originally interviewed Mr. Robinson is not present, but that would be covered by the public records exception to the hearsay rule.

And so we do believe that just as the document itself would be admissible, Investigator Voss can testify to the contents of the document. There really is no substantive difference.

MR. ENGH: Well, this is essentially testimony from a police report or what is tantamount to the same as a police report, and police reports are inadmissible.

So what they are taking is a compelled statement of some, someone who interviews Mr. Robinson when he had to go to prison and wrote something down without them ever coming in to explain what happened.

THE COURT: Okay.

MR. ENGH: So it's a bit more than unfair.

THE COURT: The pretrial ruling on this stated that the -- I agreed that the intake interview themselves introduced unfairly prejudicial evidence from which the jury could infer prior felonies, and I granted the motion to preclude the admission as agreed because I thought there was an agreement.

There are several ways around this. One of them is to admit the records which are admissible. They are police reports. They are admissible as public records, and redact them.

The other is the way that the government is doing it. And I think that actually the way the government is doing it is less prejudicial to the defendant than a redacted record that is obviously from a jail. And therefore I'm going to overrule the objection.

**(In open court)**

THE COURT: You may continue.

MR. CALHOUN-LOPEZ: Thank you, Your Honor.

BY MR. CALHOUN-LOPEZ:

Q. Investigator Voss, let me go back then.

When Mr. Robinson was interviewed on April 13th of 2025 {sic}, was he asked whether he identified with any particular group or gang?

A. Yes.

Q. And what did he say?

A. YNT or Young N' Thuggin.

Q. And I'll ask you to move just a little bit closer to the microphone. Thank you.

Do you know if defendant Trevaun Robinson was interviewed by law enforcement officers again on June 21st of 2018?

A. Yes, he was.

Q. And do you know if that interview was documented?

A. Yes, it was.

Q. And was it maintained in the system of records?

A. Yes, it was.

Q. Was it reliably preserved?

A. Yes, it was.

Q. And are those records considered reliable within the law enforcement community?

A. Yes.

Q. And do you have access to those records as a state investigator?
A. I do.
Q. And do you know when Mr. Robinson was interviewed, was he asked whether he identified with any particular group or gang?
MR. ENGH: Same objection.
THE COURT: Overruled.
You may answer.
THE WITNESS: Yes.
BY MR. CALHOUN-LOPEZ:
Q. And what did he identify himself as a member of?
A. The same group as before, YNT or Young N' Thuggin.
Q. Are you familiar, Investigator Voss, with a system known as JPay? And that's capital J, capital P-a-y.
A. Yes, I am.
Q. Is that a message service?
A. Yes, it is.
Q. And what kind of messages can be sent over JPay?
A. Individuals are able to send email, text messages, photographs. Can send short video clips to one another. Can exchange money on the platform.
Q. In your capacity as one of the case agents in this investigation, did you lawfully obtain a JPay message sent by defendant Trevaun Robinson?

A. Yes, I did.
Q. And has that been marked for identification as Government Exhibit A210?
A. Yes.
Q. And is that exhibit a true and accurate copy of the message that you obtained?
A. Yes, it is.
MR. CALHOUN-LOPEZ: Your Honor, at this point I move to admit what's been marked for identification as Government Exhibit A210.
THE COURT: Any objection?
MR. ENGH: No objection.
THE COURT: A210 is admitted.
MR. CALHOUN-LOPEZ: Publishing it for the witness and for the jury.
BY MR. CALHOUN-LOPEZ:
Q. So again, Investigator Voss, we're looking at a JPay message sent by Trevaun Robinson; is that correct?
A. Yes, it is.
Q. And -- oops -- I'll ask you, if you will, please, to read the message.
A. "What's up, gang. You walked that shit down I see. Now it's time to touch down and do what we talked about. You know I love you unconditional love. Real N words. You be pissing me off, but on the real we all got along. Live Boo

and FA. TS crazy out here, brother. Love you. 612 432-2157."

Q. You've been an investigator for 19 years. And you've investigated gangs in that time; is that correct?

A. I have.

Q. What percentage of your investigations have involved gangs, approximately?

A. I would say a majority of the cases that I am assigned have a nexus to gangs.

Q. Have you ever encountered the expression "Live Boo" before?

A. I have heard the expression "Long Live Boo" and in this particular case "Live Boo" and the phrase "Boo" in memoriam for Boo.

Q. And you said a memoriam for Boo. Who is Boo?

A. That is Prince Martin.

Q. And Prince Martin was killed; is that right?

A. He was.

Q. Where was he killed, do you know?

A. In Minneapolis.

Q. What about FA, and TS? Have you ever heard those initials before?

A. I have.

Q. In what context?

A. FA is a shortened name for another deceased individual

in Minneapolis aligned with the YNT. And TS is just text slang for, can I say, that shit, crazy.
Q. And you said FA is a, is an abbreviation. What does FA stand for?
A. Fat Ass.
Q. That's a nickname for somebody?
A. It was a nickname.
Q. I'm going to turn to page 2 here of Government Exhibit A210. Do you recognize the individual on the far right in this photograph?
A. Yes, I do.
Q. Who is it?
A. That would be Mr. Trevaun Robinson.
Q. And turning to page 3 of the exhibit, do you know this man?
A. Are you referring to the person on the right?
Q. Excuse me. Yes, I am.
A. The individual on the right is Jarrett Robinson.
Q. Is that his brother?
A. Yes.
Q. And then finally page 4 of this Exhibit. Do you recognize the man standing between two women?
A. Yes, I do.
Q. Who is that?
A. Trevaun Robinson.

Q. In your capacity as one of the case agents in this investigation, did you also lawfully obtain a series of JPay messages, or excuse me, a JPay message from defendant Josiah Taylor?
A. Yes, I did.
Q. And have you reviewed a copy of that message that has been marked for identification as A207?
A. Yes.
Q. Does that document accurately and truly reflect the document that you obtained in the course of your investigation?
A. Yes.
MR. CALHOUN-LOPEZ: Your Honor, at this point I move to admit what's been marked for identification as Government Exhibit A207.
THE COURT: Any objection?
MR. WOLD: Can we see it, please.
MR. CALHOUN-LOPEZ: May I publish to the witness and to the counsel?
THE COURT: Yes, to witness and attorneys, please.
MR. WOLD: No objection.
THE COURT: A207 is admitted.
MR. CALHOUN-LOPEZ: I'll ask permission to publish to the jury.
THE COURT: You may.

BY MR. CALHOUN-LOPEZ:
Q. Investigator Voss, this is the document from Josiah Taylor on his JPay account that you obtained?
A. Yes, it is.
Q. And can you tell, was this sent to Mr. Taylor or from him?
A. To Mr. Taylor.
Q. Who sent it?
A. Ruth Taylor.
Q. And can you tell when the message was sent?
A. August 3rd, 2022.
Q. And I'll ask you if you can see if he's wearing anything around -- excuse me. Let me back up.
Do you recognize the man in the upper right-hand corner?
A. Yes, I do.
Q. Who is that?
A. Josiah Taylor.
Q. And I'll ask you if Mr. Taylor is wearing anything around his neck here?
A. Yes, he's wearing a pendant.
Q. Now, the pendant looks like it's backwards; is that right?
A. Yes.
Q. Why would that be, do you know?

A. Commonly you see that when you take a selfie photo with a cell phone and the picture gets inverted.
Q. Are you able to, do the inversion in your mind and tell us what the pendant says?
A. On the top says 25. And on the bottom it says Booway.
Q. And in your 19 years investigating gangs, have you ever encountered the word "Booway" before?
A. Yes, I have.
Q. In what context?
A. It's a combination in reference to Boo for Prince Martin and Broadway.
Q. And what about the number 25? Have you ever encountered that in your investigations before?
A. Yes, I have.
Q. In what context?
A. As a signifier for the YNT.
Q. Why would that be?
A. Because it stands for the 25th letter of the alphabet, for the Y.
Q. I'd like to go back to defendant Trevaun Robinson.
In your capacity as case agent, did you have occasion to review photographs of tattoos that Mr. Robinson has?
A. Yes, I did.
Q. And do you know if he has any tattoos of note?

A. Yes, he does.
Q. What tattoo did you note?
A. That there is a prominent large 25 across his neck.
Q. And have you reviewed a --
MR. CALHOUN-LOPEZ: Well, I'll just ask permission to show the witness and counsel what has been marked for identification as Government Exhibit A214.
THE COURT: You may do so.
BY MR. CALHOUN-LOPEZ:
Q. Showing you now what has been marked for identification as Government Exhibit A214. Do you recognize this photograph?
A. Yes, I do.
Q. Is it the photograph of Mr. Robinson's tattoo?
A. Yes.
Q. Does it fairly and accurately depict the tattoo that he has?
A. At the time this picture was taken, yes.
MR. CALHOUN-LOPEZ: Your Honor, at this point I move to admit what's been marked for identification as Government Exhibit A214.
THE COURT: Any objection?
MR. ENGH: No objection.
THE COURT: A214 is admitted.
MR. CALHOUN-LOPEZ: And I'll publish to the

witness and to the jury?

THE COURT: You may.

BY MR. CALHOUN-LOPEZ:

Q. This is the 25 tattoo; is that correct?

A. Yes, it is.

Q. Can you see anything to the left or to the right of it?

A. It kind of appears to be some sort of pattern on either side of the 25.

Q. And again, you've seen the number 25 in the context of your investigations; is that right?

A. Yes.

Q. What is that context?

A. For Y, for YNT.

Q. In your capacity as case agent, did you have an opportunity to listen to lawfully recorded calls made by a man named Clinton Brown?

A. Yes, I did.

Q. And have you reviewed a copy of that call that has been marked for identification as Government Exhibit GG56?

A. Yes.

Q. And was that exhibit a true and accurate selection of the recording of the that call?

A. Yes.

MR. CALHOUN-LOPEZ: Your Honor, at this point I move to admit what's been marked for identification as

Government Exhibit GG56.

THE COURT: Any objection?

Hearing none, GG56 is admitted.

MR. CALHOUN-LOPEZ: And this is an audio call. I will publish to the court and to the jury.

THE COURT: Is there a transcript that goes along with this call?

MR. CALHOUN-LOPEZ: Yes, Your Honor.

THE COURT: All right.

Go ahead.

(Audio recording played)

MR. CALHOUN-LOPEZ: So pausing at 15 seconds there.

BY MR. CALHOUN-LOPEZ:

Q. There was a reference to gang, gang, gang 25; is that right?

A. Yes.

Q. And we're resuming the exhibit.

(Audio recording played)

Q. And the exhibit has concluded there. It ended with the word "Bway"; is that right?

A. Yes.

Q. Have you ever heard the word "Bway" before?

A. Yes, I have.

Q. In what context?

A. To refer to Broadway.
Q. The street?
A. Yes.
Q. In your capacity as case agent, did you have an opportunity to listen to lawfully recorded calls made by defendant Josiah Taylor?
A. Yes, I did.
Q. And do they include a call made by Clinton Brown, the man that we just heard?
A. Yes.
Q. And have you reviewed copies of those calls, at least selections of them, that were marked for identification as Government Exhibit GG57?
A. Yes, I have.
Q. Sorry. I paused there. I paused too long. GG57, 58, 59, 60 and 61?
A. Yes.
Q. And are those calls and selections true and accurate selections of recordings of the calls that you obtained from Mr. Taylor?
A. Yes, they are.
MR. CALHOUN-LOPEZ: Your Honor, at this point I move to admit what's been marked for identification as Government Exhibit GG57, 58, 59, 60 and 61.
THE COURT: Any objection?

MR. WOLD: Your Honor, could we have a sidebar for a minute?

THE COURT: You may.

**(Sidebar discussion)**

THE COURT: Mr. Wold.

MR. WOLD: Thanks, Your Honor.

I just wasn't prepared for these witnesses. I talked to the prosecutor during the break when he was indicated he was going to call Erin Voss.

And he indicated that the exhibit related to my client that would be introduced was the, I think was 207 that I didn't object to. That was the only one I'm aware of.

I haven't had time to review these exhibits, Your Honor. If we're going to take a break soon, I would like to have that opportunity before I address them.

THE COURT: Sure. It's 4:45. We can do that.

Mr. Calhoun-Lopez, do you have anything to add?

MR. CALHOUN-LOPEZ: No, Your Honor, other than the fact I don't intend to publish these exhibits. We could conditionally admit them and --

But either way will work.

THE COURT: Okay. Ms. Voss has to come back tomorrow anyway.

**(In open court)**

THE COURT: All right, everyone. We're going to break for the day. I'll see you back here at 9:00 tomorrow morning.

You all have a good evening.

All rise for the jury.

(End of requested excerpt)

* * *

I, Renee A. Rogge, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Certified by: /s/Renee A. Rogge
Renee A. Rogge, RMR-CRR